KLASKO, RULON, STOCK & SELTZER, LLP
William A. Stock
1800 John F. Kennedy Blvd.
Philadelphia, PA 19103
(215) 825-8600

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, P.C.
Alan C. Promer
Dylan J. Steinberg
20 Brace Road, Suite 201
Cherry Hill, NJ 08034
(856) 616-2100

Attorneys for Plaintiff CAMO Technologies, Inc.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK VICINAGE

| | |
|---|---|
| CAMO TECHNOLOGIES, INC., : <br> : <br> *Plaintiff*, : <br> : <br> v. : <br> : <br> HILDA L. SOLIS, Secretary of the : <br> Department of Labor; JANET A. : <br> NAPOLITANO, Secretary of the : <br> Department of Homeland Security; : <br> ALEJANDRO MAYORKAS, Director, : <br> United Statements Citizenship and : <br> Immigration Services, : <br> : <br> *Defendants*. : | CASE NO. _____ <br><br> COMPLAINT |

## COMPLAINT

CAMO Technologies, Inc. ("CAMO"), with a principal place of business at 1480 US Highway 9 North, Suite #301, Woodbridge, NJ 07095, by its undersigned counsel, bring this Complaint against Hilda L. Solis, Secretary of the Department of Labor; Janet A. Napolitano, Secretary of the Department of Homeland Security; and Alejandro Mayorkas, Director, United

Statements Citizenship and Immigration Services, each in their official capacities and in support thereof states as follows:

## NATURE OF ACTION

1. CAMO is a New Jersey-based information technology consulting and staffing company.

2. The Secretary of the Department of Labor ("DOL") is authorized to regulate employers who hire foreign professional workers through the H-1B nonimmigrant visa program. Such employers agree, *inter alia*, that they will pay H-1B nonimmigrant workers at least the prevailing wage for the occupation in the area they will be employed; that they will not use H-1B nonimmigrant workers to displace striking US workers; and that they will comply with notice and posting requirements related to the application for H-1B visas. The Secretary may impose sanctions for violations of these requirements after a complaint and investigation. These sanctions can include back wages and civil money penalties, as well as the referral to the Department of Homeland Security ("DHS") for institution of prohibition against filing H-1B or other employment-related immigration petitions for either one or two years, depending on the nature and severity of the violation..

3. In 2010, CAMO was investigated in response to a complaint that one or more of its H-1B workers had been underpaid. The Wage and Hour Division of DOL issued a determination that did not include any violation of the wage payment requirements with respect to any of CAMO's H-1B workers. The Wage and Hour Division did, however, sanction CAMO for failing to post notices of CAMO's labor condition application ("LCA") filings at some of the worksites at which it placed its employees. The Administrator, Wage and Hour Division ("Administrator") classified the violation as "willful" and, as a result of that classification, assessed a civil monetary penalty of $192,625 and referred CAMO to DHS for a mandatory

2

debarment from filing immigrant and nonimmigrant petitions for any employees for a period of two years.

4. CAMO appealed the Administrator's decision to an Administrative Law Judge (the "ALJ"), who heard several hours of live testimony and determined that the Administrator had improperly classified the violation as "willful" because CAMO made a good faith effort to comply with the regulations and believed that its actions were complaint. The ALJ also found that the Administrator had failed to consider the appropriate factors in reaching a determination and that debarment was an inappropriate sanction.

5. The Administrator appealed the ALJ's decision to the DOL Administrative Review Board (the "ARB"), which reversed the ALJ's decision and reinstated the sanction imposed by the Administrator, including the referral to DHS for a two-year debarment.

6. In so doing, the ARB ignored the credibility determinations made by the ALJ, who actually heard live testimony from the key witnesses, and applied the wrong standard for willfulness. As a result, the sanction imposed, which will likely result in CAMO's dissolution, is far out of proportion to the severity of the violation.

7. Because the ARB's determination was arbitrary and capricious, an abuse of its discretion, unsupported by substantial evidence, and otherwise contrary to the provisions of the applicable laws and regulations, CAMO asks that it be set aside pursuant to 5 U.S.C. § 706.

**PARTIES**

8. Plaintiff CAMO Technologies, Inc. is a New Jersey corporation with its principal office in Woodbridge, NJ.

9. Defendant Hilda L. Solis is the Secretary of the Department of Labor. The Department of Labor is the agency responsible for enforcing wage and hour compliance

standards under the Immigration and Nationality Act ("INA") that relate to H-1B nonimmigrant workers. Ms. Solis is sued in her official capacity.

10. Defendant Janet A. Napolitano is the Secretary of DHS. DHS is the agency responsible for implementing the INA. Ms. Napolitano is sued in her official capacity.

11. Defendant Alejandro Mayorkas is the Director of United States Citizenship and Immigration Services ("USCIS"), a division of DHS responsible for adjudicating petitions for benefits by employers on behalf of their employees, and for administering the debarment provisions provided for by the INA. Mr. Mayorskas is sued in his official capacity.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702, *et seq.*, and 28 U.S.C. § 1331.

13. Venue is proper in this Court under 28 U.S.C. §1391(e), as the Plaintiff's principal place of business is in New Jersey, and the Defendants are officers and employees of a United States agency.

## STATUTORY AND REGULATORY FRAMEWORK

14. **8 U.S.C. § 1101(a)(15)(H)(i)(b)** or "H-1B" establishes the program under which American employers may temporarily employ non-immigrant aliens to perform specialized jobs in the United States.

15. **8 U.S.C. § 1182(n)** establishes the statutory requirement for the labor condition application ("LCA"), a pre-condition to the approval of an H-1B nonimmigrant visa and describes the penalties to be assessed for a willful or substantial violation of the requirement.

16. **20 C.F.R. § 655.734** sets forth requirements for the posting, either electronically or in hard copy, of LCAs at the place of employment where an H-1B nonimmigrant worker will be employed (the "LCA Notice Requirements").

4

17. **8 U.S.C. § 212(n)** establishes an enforcement system under which DOL is authorized to determine whether an employer has failed to meet the LCA Notice Requirements and is authorized to impose fines and penalties. The DOL has delegated this enforcement authority to the Administrator.

18. **20 C.F.R. § 655.810** sets forth the penalties for violation of the LCA provisions, including the notice provisions of 20 C.F.R. § 655.734. For a willful failure to comply with the LCA Notice Requirements, the provision allows for a civil penalty of up to $5,000 per violation and a disqualification from filing H-1B applications for a period of not less than two years. For a substantial failure to comply with the LCA Notice Requirements, the provision allows for a civil penalty of up to $1,000 per violation and a disqualification from filing H-1B applications for a period of not less than one year. Where a notification violation is neither willful nor substantial, Section 655.810 does not provide for any penalty. Section 655.810 also sets forth a non-exclusive list of factors to be considered in determining the level of penalty to be assessed.

19. **20 C.F.R. § 655.855** states that, upon final determination of the violations, the Administrator shall notify DHS and the Employment and Training Administration ("ETA") within the DOL of the associated employer disqualification periods set out in 655.810(d). Upon notification, and for the specified period, DHS shall not approve any additional petitions filed by the employer for the employment of immigrant or nonimmigrant workers. 20 C.F.R. §655.810(c). Upon receipt of the Administrator's notice, the ETA "shall" invalidate any subpart H LCAs and not accept any new applications for the specified period. 20 C.F.R. § 655.855(d).

20. **20 CFR § 655.810(c)** adopts the definition of a "willful failure" set forth in *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988), namely that it requires a "knowing failure or a reckless disregard with respect to whether the conduct was contrary to [the INA]."

5

## FACTUAL BACKGROUND AND ADMINISTRATIVE PROCEEDINGS

21. As a consulting and staffing agency, CAMO's only real asset is its employees, substantially all of whom are foreign nationals. As such, CAMO relies on its ability to petition for and hire foreign nationals for its survival. This includes the ability to petition for extensions of the H-1B status of substantially all of its current employees, who are typically granted H-1B status in installments of up to three years.

22. Many of CAMO's employees are placed at the worksites of companies with whom CAMO has a direct contract for provision of information technology services (the "primary clients"). In other cases, CAMO employees are initially provided to primary clients who then place the workers at the worksites of their own clients (the "secondary clients").

23. In August of 2005, Investigator Ronald Rehl ("Rehl"), on behalf of the Administrator, notified CAMO that it was being investigated for alleged violations of the H1-B regulations, including alleged failure to pay required wages to one H-1B nonimmigrant and alleged failure to post notice of the filing of LCAs at all work locations.

24. During Rehl's 2005 investigation, CAMO's representatives explained to Rehl that because of non-competition obligations and other contractual provisions, CAMO was often unable to communicate directly with secondary clients, which impeded their efforts to ensure that LCA notifications were posted at secondary client worksites.

25. Rehl acknowledged the difficulties arising from CAMO's contractual obligations and advised that CAMO should keep records of its attempts to post LCAs at client locations.

26. At the conclusion of the 2005 investigation, the Administrator issued a determination letter, dated January 16, 2006 (the "2006 Determination Letter") finding that CAMO had failed to pay required wages to one nonimmigrant worker and had failed to comply with the LCA Notice Requirements. CAMO paid the required back wages. In the 2006

6

Determination Letter, no civil money penalty or debarment was assessed for the violation of the LCA Notice Requirements.

27.    In response to Rehl's advice, CAMO created a form, which it referred to as an "LCA statement," on which it tracked its attempts to ensure that LCAs were posted at each primary client and secondary client worksite. Under CAMO's procedures, after requests to post the LCA were made and documented, CAMO employees were placed at the worksite whether or not CAMO was able to verify that the LCA had actually been posted.

28.    Based on its discussions with Rehl, CAMO believed in good faith that its procedures for attempting to post LCAs at each primary client and secondary client worksite were in compliance with the LCA Notice Requirements.

29.    Every LCA was also conspicuously posted in two locations at CAMO's offices in Woodbridge, NJ.

30.    On March 4, 2010, Rehl met with Nalini Parsram ("Parsram"), CAMO's Vice President, HR and Administration, and Ramesh Gurnani, CAMO's counsel, to discuss alleged violations that occurred after the 2006 Determination Letter. Among the topics discussed were CAMO's compliance with the LCA Notice Requirements for the 92 LCAs CAMO filed between September 27, 2006 and September 22, 2009.

31.    CAMO cooperated fully with the 2010 investigation and provided the LCA statements to Rehl during his investigation.

32.    Without the LCA statements CAMO voluntarily provided, Rehl would not have been able to determine whether or not posting of the LCA at primary client and secondary client worksites had occurred.

33. The relevant regulations are inconsistent with regard to whether notice is required at third party worksites. 20 C.F.R. § 655.734 specifically states that "An employer seeking to employ H-1B nonimmigrants shall state on Form ETA 9035 that the employer . . . has posted notice of filing in conspicuous locations *in the employer's establishment(s)* in the area of intended employment, in the manner described in this section" (emphasis added). This requirement is consistent with 8 U.S.C. § 1182(n)(1)(C), which requires only that the "employer" provide notice. 20 C.F.R. § 655.734(a)(1)(ii)(A) and (B), however, in describing how to provide notice, do not contain the "in the employer's establishment" limitation and require notice to be posted at third party worksites in addition to the employer's establishment.

34. No regulation requires CAMO to keep documentation such as its "LCA statements" or other records of its posting of LCAs at third party worksites or its attempts to make such postings. 20 C.F.R. § 655.734(b) requires only that an employer "shall develop and maintain documentation sufficient to meet its burden of proving the validity [of its notice statement]" and that the employer "shall note and retain the dates when, and locations where, the notice was posted and shall retain a copy of the posted notice."

35. On May 7, 2010, the Administrator issued a determination letter (the "2010 Determination Letter") concluding that, between September 27, 2006 and September 22, 2009, CAMO had failed to post LCAs at client worksites on 67 occasions. The 2010 Determination Letter went on to find that CAMO's had willfully violated the LCA Notice Requirements and imposed a civil money penalty of $192,625 and a debarment from filing of additional LCAs for two years.

8

36. CAMO filed an appeal of the 2010 Determination Letter and, on September 8, 2008, Administrative Law Judge Janice K. Bullard held a hearing at which multiple witnesses testified.

37. In a detailed, 25-page decision, the ALJ found credible CAMO's testimony that it believed its procedures complied with the LCA Notice Requirements. In particular, she found:

> CTI [i.e., CAMO] fully cooperated in the 2009 investigation and provided documents that the Administrator admitted did not appear to be fabricated in any way. Ms. Parsram had no trepidation about the company's documentation as she believed CTI was compliant. It defies reason to conclude that CTI would keep and produce such candid records of non-compliance if it thought that its practices were in violation of the regulatory requirements. Considering that the Administrator is totally reliant upon the representations of Employers regarding posting, CTI could easily have kept files that noted that posting was accomplished. Indeed, the Administrator admitted that it has no authority to investigate whether a third party complied with posting, but was limited to determining from an employer's document whether posting had been accomplished.

38. Because the ALJ found that CAMO had a good faith belief that it was compliant, and therefore there was no "knowing failure . . . with respect to whether the conduct was contrary to [the INA]," 20 C.F.R. § 55.805(c), she found that CAMO's violation was not a "willful failure."

39. In addition, the ALJ noted that, in determining the penalty for a violation, the Administrator had failed to consider CAMO's good faith efforts at compliance, among the enumerated factors to be considered under 20 C.F.R. § 655.810(c).

40. While the ALJ concluded that CAMO had violated the LCA Notice Requirements, she found that the violations were neither willful nor substantial and that civil money penalties and debarment were not warranted.

9

41. The Administrator appealed the ALJ's decision and on August 31, 2012, the Administrative Review Board of the DOL (the "ARB") issued a "Final Decision and Order," reversing the findings of the ALJ.

42. The ARB ignored the ALJ's credibility determinations and found, contrary to the testimony in the record, that CAMO's "failure to comply was knowing and therefore willful."

43. The ARB reinstated the penalties assessed by the Administrator in the 2010 Determination Letter.

44. Since receiving the 2010 Determination Letter, CAMO has complied fully with the LCA Notice Provisions and has instituted procedures to ensure compliance going forward.

## COUNT ONE: JUDICIAL REVIEW OF AGENCY DETERMINATION PURSUANT TO 5 U.S.C. § 706

45. The allegations of the preceding paragraphs of this Complaint are incorporated and realleged herein by this reference.

46. At all times between September 27, 2006 and September 22, 2009, CAMO believed that its LCA procedures were compliant with the LCA Notice Requirements.

47. The ARB's determination that CAMO willfully violated the LCA Notice Requirements is arbitrary and capricious.

48. The ARB's determination that CAMO willfully violated the LCA Notice Requirements is unsupported by substantial evidence in the administrative record.

49. The ARB's determination that CAMO willfully violated the LCA Notice Requirements is contrary to the definition of "willful failure" in the applicable regulations.

50. The ARB's determination that CAMO willfully violated the LCA Notice Requirements is an abuse of its discretion.

51.     The ARB's determination that the LCA Notice Requirements require CAMO to ensure that notice is posted at third party worksites, including the worksites of primary clients and secondary clients, is contrary to applicable law.

52.     The imposition of a debarment from filing further LCAs will cause immediate and irreparable harm to CAMO.

WHEREFORE, CAMO requests that this Court:

(a)     Preliminarily and permanently enjoin DHS and USCIS from debarring CAMO and refusing to approve or to allow the filing of petitions by CAMO;

(b)     Preliminarily and permanently enjoin the ETA from invalidating CAMO's LCAs, and from debarring the filing or approval of any new labor condition applications or labor certification applications;

(c)     Preliminary and permanently enjoin the DOL from requiring CAMO to ensure that LCAs are posted at third party worksites before placing an employee at such a third party worksite;

(d)     Declare that the ARB's Final Decision and Order finding a willful violation of the LCA Notice Requirements is incorrect as a matter of law, and remand to the Administrator for the exercise of discretion;

(e)     Declare that the ARB's Final Decision and Order be reversed insofar as it orders debarment of Plaintiff for failure to comply with the LCA Notice Requirements;

(f)     Declare that the ARB's Final Decision and Order be reversed insofar as it orders Plaintiff to pay a civil money penalty for failure to comply with the LCA Notice Requirements;

(g)     Award attorney fees and costs pursuant to 28 U.S.C. § 2412; and

(h)   Award such other relief as the Court may deem just and proper.

Dated: September 26, 2012

By: _____

KLASKO, RULON, STOCK & SELTZER, LLP
William A. Stock
1800 John F. Kennedy Blvd.
Philadelphia, PA 19103
(215) 825-8600

HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER, P.C.
Dylan J. Steinberg
20 Brace Road, Suite 201
Cherry Hill, NJ 08034
(856) 616-2100

Attorneys for Plaintiff CAMO Technologies, Inc.