UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **CAMO TECHNOLOGIES, INC.,** | Docket No.: 12-cv-6050-WJM-MF |
| Plaintiff, | |
| v. | **OPINION** |
| **HILDA SOLIS,** *et al.*, | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This is an action brought pursuant to the Administrative Procedure Act, 5 U.S.C. § 702, for review of a final decision of the Department of Labor. Plaintiff CAMO Technologies, Inc. ("CAMO" or "Plaintiff") filed a motion for summary judgment seeking to set aside a Final Decision and Order of the Department of Labor's Administrative Review Board ("ARB"). Defendants, who are the Secretary of the Department of Labor, the Secretary of the Department of Homeland Security, and the Director of the U.S. Citizenship and Immigration Services ("Defendants") filed a cross-motion to affirm the same Decision and Order. There was no oral argument. L.Civ.R. 78.1(b).

For the reasons set forth below, Plaintiff's motion is **GRANTED**, and the Defendants' motion is **DENIED**.

**I.   BACKGROUND**

This case involves the notice-posting requirements of the Immigration and Naturalization Act's H-1B visa program. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b). The H-1B visa program allows nonimmigrant workers[1] in certain "specialty occupations" to work on

---

[1] "Nonimmigrants" are foreign nationals admitted to the United States for a temporary period of time and for a specific purpose, *e.g.*, to visit, study, or work. *See* 8 U.S.C. § 1101(a)(15).

a temporary basis in the United States for employers who file proper applications with the Department of Labor ("DOL") and the Department of Homeland Security ("DHS"). *Id.*

CAMO is a New-Jersey-based consulting company that provides workers who have computer programming and technology expertise to its clients. (Plaintiff's Statement of Undisputed Material Facts ("Pl's SOF") at ¶ 8) CAMO challenges a Department of Labor ("DOL") determination that CAMO willfully violated the H-1B statues and regulations by failing to post notices of H-1B visa applications at appropriate work sites sixty-seven times between 2006 and 2009.

The DOL imposed $192,625 in civil monetary penalties and a mandatory two-year disbarment from the H-1B program. Plaintiff sought the review of an Administrative Law Judge ("ALJ"), who rescinded the penalties. DOL appealed to its Administrative Review Board ("ARB"), which reinstated the penalties. Plaintiff now seeks this court's review.

### A.    STATUTORY AND REGULATORY SCHEME

An employer who seeks H-1B status for an employee or prospective employee must submit a Labor Condition Application ("LCA") to the DOL. 8 U.S.C. § 1182(n)(1). In addition, notice of the filing of the LCA must be posted. 8 U.S.C. § 1182(n)(1)(C); 20 C.F.R. § 655.734 (the "LCA Notice Requirements"). The employer can satisfy the LCA Notice Requirements by "posting a notice in at least two conspicuous locations at each place of employment where any H-1B nonimmigrant will be employed (whether such place of employment is owned or operated by the employer or by some other person or entity)."[2] 20 C.F.R. § 655.734(a)(ii)(A)(1).

The LCA Notice Requirements are designed to protect American workers from displacement by H-1B workers. *See* 65 Fed. Reg. 80110 at * 80111 (Dec. 20, 2009).

According to the DOL, 20 C.F.R. § 655.810(b)(2)(i) permits the DOL to assess a $5,000 penalty for "willful" violations of the LCA Notice Requirements.[3] (Defendants' Moving Brief at 10) The regulations require DHS to debar an employer who commits a "willful failure" to comply with certain H-1B program requirements from further immigration petitions for its employees for at least two years. 20 C.F.R. § 655.810(d). A

---

[2] The employer can meet the LCA Notice Requirements electronically by making it available to "affected employees" by "any means it ordinarily uses to communicate with its workers about job vacancies or promotion opportunities." 20 C.F.R. § 655.734 (a)(ii)(B).

[3] CAMO does not dispute this. However, it is not clear to this court that the regulations permit more than a $1,000 penalty for violations of the LCA Notice Requirements. *See In Re Anonymous Petition for Alien Worker as a Skilled Worker or Professional*, AAU SRC 08 163 52031 (DHS), 2010 WL 4088148 at *1 fn.1 (April 19, 2010). Since CAMO persuasively argues that its violations could not rationally have been construed as "willful," the court will confine its analysis to that issue.

"willful failure" is a "knowing failure or reckless disregard with respect to whether the conduct was contrary to" the statute and regulations. 20 C.F.R. § 655.805(c) as a

### B. FACTUAL BACKGROUND

CAMO is an H-1B dependent employer, as approximately 90 percent of its workforce (42 out of 48 employees) is composed of H-1B nonimmigrant workers. (Defendants' Local Rule 56.1 Statement ("Defs' SOF") at ¶ 1; *see also* Plaintiff's Local 56.1 Response at ¶ 1)  Many of CAMO's employees work intermittently in CAMO's offices in Woodbridge, New Jersey, but are also asked to work at the facilities of the clients for whom CAMO is providing information technology services ("direct clients" or "primary clients"). (Pl's SOF at ¶ 10)  In a significant number of cases, CAMO's direct clients are other information technology consulting companies, who, in turn, place CAMO's employees, along with its own staff, at the locations of their own clients (the "secondary clients" or "end users" or "third-parties"). (Pl's SOF at ¶ 11)

#### 1. The 2001 Investigation

In late 2001, John Warner of DOL conducted an investigation (the "2001 Investigation") of BIT Technologies, Inc. ("BIT"), a predecessor company to CAMO.[4] (*See* Pl's SOF at ¶ 12)  The investigation involved three meetings with BIT representatives, principally, BIT Vice President Shrindar Marghan and Human Resources Manager Anurag Sharma.  Sharma was the person who would have been responsible for the LCA postings during the 2001 Investigation. (Certified Record, "CR" 360)  The investigation uncovered violations of H-1B wage requirements and violations of LCA Notice Requirements. (CR 233)

Warner's first meeting occurred in October 2001 ("the October 2001 Meeting"). Nalini Parsram, BIT's Business Director, attended this meeting briefly. (CR 360 at ¶ 18; CR 234, 305)  At this time, Ms. Parsram had no responsibilities for the filing of H-1B visas, and she was on maternity leave. (CR 303)  BIT asked Parsram to attend only because the DOL addressed its first letter about the upcoming investigation at BIT to her.[5] (CR 305-06)  Parsram had no recollection of discussing LCA Notice Requirements at the October 2001 Meeting. (CR 306)

Marghan notified Warner via e-mail before the October 2001 Meeting that Marghan and not Parsram would be the point person for the investigation due to Parsram's being on

---

[4] During the period of the 2001 Investigation, BIT, which was wholly owned by Ashwani Jasti, was acquired by CAMO, Inc., a publically-traded company, and renamed CAMO Technologies Inc.  During the transition, the tax identification number remained the same, and the CEO and President remained the same.  However, Nalini Parsram noted that although the "Federal ID remained the same, basically everything else was different."  (*See* CR 239, 312, 323-325)

[5] Parsram took two personal leaves of absence.  One was from July 2001 until the beginning of 2002, and the second was from May 2002 until the end of 2002. (CR 304)

leave. (CR 443) Yet, on October 15, 2001, Warner sent an e-mail to Parsram, advising in relevant part as follows:

> In accordance with Title 20, Code of Federal Regulations Part 655.734(a)(1)(A), an H-1B employer is required to post the notice of the filing of an LCA Form 9035 in two or more conspicuous places so the workers in the occupational classification AT THE PLACES OF EMPLOYMENT can easily read or see the notice: This means, for example, that if you have consultants working at AT&T in Kansas City, Mo you must post the notice at AT&T in Missouri.  Our Department's position is that an H-1B employer should not place workers with a client that balks at helping you meet this requirement.  NONE of the notices you posted in one place at your office in Woodbridge meets your obligation to post the LCA under the statute.  You should immediately make arrangements to post at all client workplaces in California, Colorado, Illinois, Iowa, New York, etc.  There are civil money penalties and other sanctions for substantial failure to post the LCA.  You are urged to document any efforts you made to retroactively comply with this obligation.

Marghan responded via e-mail, dated October 17, 2001, advising Warner that BIT would "immediately communicate to all our clients/staffing companies asking them to post notice of filing the LCA form 9035." (CR 441)  On November 5, 2001, BIT advised John Warner that it had posted notice of filing of the LCA at 60 party worksites in 17 states. (CR 360 at ¶ 23)

After the conclusion of the 2001 Investigation, DOL sent Marghan a Determination Letter dated June 19, 2002. ("The 2002 Determination Letter")  The 2002 Determination Letter noted that the LCA Notice Requirements had been violated and stated that the "remedy" for these past violations was to "properly post in all worksites and comply with § 655.734." (CR 386-89)

### 2. The 2005 Investigation

DOL conducted another investigation of CAMO in 2005 ("the 2005 Investigation") because Anurag Sharma, who had been terminated in April 2004, filed a complaint about H-1B wage requirement violations with DOL after his termination. Ronald Rehl was the DOL Investigator.  The 2005 Investigation consisted of two in-person meetings and a phone call.  During the 2005 Investigation, Rehl met with Ramesh Gurnani, CAMO's lawyer, and Ira Gordon, its HR Manager.  Nalini Parsram also recalled participating in the two in-person meetings.  (CR 308)

Regarding the LCA Notice Requirements, Parsram recalled telling Rehl that CAMO could not directly communicate with its secondary clients because of non-compete

agreements and that many secondary clients refused to post the notices. (CR 309) Parsram recalled Rehl telling her that he understood and told her to document CAMO's efforts to post.[6] (*Ibid.*) Prior to the 2005 Investigation, CAMO did not document its efforts to effectuate postings with uncooperative secondary clients.

As a result of Rehl's advice, CAMO initiated a new process. Parsram testified:

We created what's called an LCA statement, which is sent by mail to each employer that holds an H-1, a copy of their LCA along with a statement that they have to sign off on. That statement is put in their public access file. We also created a document to basically document the fact that we made an attempt or did post at the end client location.

(CR 311)

On January 19, 2006, DOL sent CAMO President Ashwani Jasti a letter ("the 2006 Determination Letter") noting violations of the LCA Notice Requirements and ordering CAMO to "post notice of the LCA filing for 10 days in two conspicuous locations at each place of employment where any H-1B nonimmigrant will be employed." (CR 440) DOL presented no evidence that Jasti or anyone else ever actually received or read this letter.

### 3. The 2010 Investigation

Rehl received more complaints about CAMO between 2007 and 2009. (CR 152) He conducted another investigation ("the 2010 Investigation"). This investigation involved four meetings between October 2009 and April 2010. (CR164-73) Wages were the focus of these meetings. (CR 185)

At the first meeting in October 2009, Rehl met with Ramesh Gurnani and Nalini Parsram. By this time, Parsram was responsible for overseeing H-1B applications, although she was not directly involved with them. (CR 166, 302)

Rehl inquired into CAMO's posting practices. He learned that CAMO always posted LCA notices at its own site in Woodbridge, New Jersey and that CAMO employees always asked permission to post at the primary clients' locations. (CR 156) Where CAMO used a subcontractor or intermediary placement company, they asked that company's

---

[6]Parsram testified: "Mr. Rehl at the time asked us our policy in terms of posting, how do we . . . try to post at the client location. . . . I explained to him that at CAMO we usually contract with our [primary] client, and our employees are sent to an end client location. So we do quite often have non-competes in place. And, because of those non-competes, we are unable to talk to the end client directly about postings. We have to rely on our [primary] client about the posting. . . . [Mr. Rehl] said that he understood our business process and that there are non-competes in place, which makes it difficult for us to contact the end client directly. . . And at that time, he said that we need to basically document the fact that we made the attempt to post at the end client location." (CR 308-11)

5

permission to speak to the secondary client and to post. (CR 156) If the secondary client did not grant permission, CAMO did not post. (*Ibid.*) Postings at some sites outside of CAMO's control did occur. (CR 375)

According to Rehl, Gurnani stated that he believed an ARB or ALJ decision had determined that a posting only needed to be done if there were multiple CAMO employees at a particular location. (CR 169) Gurnani also told Rehl that he believed "the attempt to post is important and not the actual posting." (CR 203) Gurnani told Rehl that many H-1B attorneys had told him that posting only needed to be attempted. (CR 203-04) Parsram stated that it was not until after the conclusion of the 2010 Investigation that "we realized . . . that not posting at the end client was not an option." (CR 312)

In connection with the investigation, CAMO gave Rehl ninety-two H-1B application packets. (CR 160) Sixty-seven of them noted that the end user would not let CAMO post its LCA notices. (CR 160) Parsram stated that she had no concerns about producing these documents to Rehl because she "really thought we were compliant." (CR 314)

Subsequent to the 2010 Investigation, Parsram began personally making sure that postings were actually effectuated at all the secondary clients' worksites. (CR 315) She noted widespread belief among these clients that postings were not required.[7]

### 4. Administrative Proceedings

DOL sent CAMO President Ashwani Jasti a Determination Letter dated May 7, 2010 (the "2010 Determination Letter"). DOL found that CAMO had "willfully failed to post notice of the Labor Condition Application" and imposed civil penalties of $192,625 for the sixty-seven individual violations that occurred between 2006 and 2009. DOL also recommended that DHS disbar CAMO from the H-1B program for a period of at least 2 years. (CR 411, 358-59)

---

[7]Parsram testified: "Their reaction [to my insistence on an LCA posting] is primarily that I don't know the regulation. They say that they . . . file numerous H-1's, they place their H-1's at the end client locations, they have never had to post [except for in] their office for 10 days. I have been told that the end client in certain cases refuses to post because the person that's coming to work at the location is not their employee. They have never filed an H-1 for them, they are not on their payroll, a full-time employee, so there is no reason for them to post. I have also been told that the company that we, for example, would contract with, our client says that actually it's not supposed to be posted at the end client location, it's supposed to be posted with our client, which is the company that we contract with. . . . [M]ost of the companies, whether it's our client or the end client, are not aware . . . this posting is needed." (CR 316)

CAMO filed for a hearing before an Administrative Law Judge ("ALJ"). The ALJ found that CAMO had not willfully failed to satisfy the LCA Notice Requirements and rescinded the penalties. (Pl's SOF at ¶ 49)

The ALJ found that CAMO's actions were inconsistent with "willful" violations. The ALJ noted: (1) CAMO fully cooperated with the 2005 Investigation; (2) CAMO provided documents that were not fabricated to the DOL; (3) the DOL had no authority to investigate whether CAMO had posted at third party sites, other than from CAMO's own documentation; (4) Parsram had no trepidation about handing over the documents; (5) Parsram's testimony was credible. He thus concluded:

> It defies reason to conclude that [CAMO] would keep and produce such candid records of non-compliance if it thought that its practices were in violation of the regulatory requirements. Considering that [DOL] is totally reliant upon the representations of Employers regarding posting [CAMO] could easily have kept files that noted that posting was accomplished. (CR 376)

The ALJ also rejected the DOL's argument that the 2001 Investigation was the first of three investigations. The ALJ stated that "the evidence does not establish a clear connection between the individuals who represented BIT Tech and those who represented [CAMO] during the various investigations." (CR 377) The ALJ gave weight to Rehl's 2006 report, which stated that "it can not [sic] be determined that any officer or official of CAMO [T]echnologies had any knowledge of the findings in the prior investigation." (CR 376-77)

DOL appealed to the ARB. (Pl's SOF at ¶ 50) The ARB reversed the finding of the ALJ and reinstated the penalties of the 2010 Determination Letter, finding that the violations were willful. (Pl's SOF at ¶ 51) The ARB's finding of a willful failure rested entirely upon a perfunctory conclusion that the Stipulation of Facts before the ALJ contradicted the ALJ's determinations about CAMO's state of mind. (CR 7) The ARB's central conclusion stated:

> [CAMO]'s admissions established that it violated the posting requirements 67 times from 2006 through 2009 and that [DOL] repeatedly notified it over several years of its deficient posting before 2006. Consequently, these admissions establish as a matter of law that from 2006 through 2009, [CAMO] willfully violated the posting requirements of U.S.C.A. § 1182(n)(1) and 20 C.F.R. § 655.734.

7

## II. STANDARD OF REVIEW

Under the Administrative Procedure Act, a reviewing court must set aside agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706. This standard of review is narrow and presumes the agency action is valid but does not shield the agency action from a thorough, probing, in-depth review. *Am. Littoral Soc. v. U.S. E.P.A. Region*, 199 F. Supp. 2d 217, 227 (D.N.J. 2002) (*citing Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415 (1971); *Ethyl Corp. v. EPA*, 541 F.2d 1, 34 (D.C.Cir. 1976)). "[T]he court's inquiry is limited to determining whether the agency considered the relevant factors and articulated a rational connection between the facts found and the choice made." *Baltimore Gas & Elec. Co. v. Natural Res. Defense Counsel, Inc.,* 462 U.S. 87, 105 (1983).

"[A] reviewing court is not barred from setting aside [an agency] decision when it cannot conscientiously find that the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the [agency's] view." *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Id.* at 488.

This case involves a disagreement between an ARB and an ALJ. "The Supreme Court has made it clear that the substantial evidence standard 'is not modified in any way when the Board and its [ALJ] disagree.'" *Pennzoil Co. v. F.E.R.C.*, 789 F.2d 1128, 1135 (5th Cir. 1986) (*quoting Universal Camera Corp.*, 340 U.S. at 496). "Nevertheless, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight, including determinations by the ALJ which differ from the agency's decision." *Id.* at 1135 (internal citations omitted). "When the ARB has rejected the credibility determinations of the ALJ, the Court subjects the record to particular scrutiny." *Ibid.* "Review is heightened not because the standard differs but because evidence supporting a conclusion is likely to be less substantial when the ALJ's conclusion differs from that of the agency." *Id.* at 1135 (*citing Universal Camera Corp.,* 340 U.S. at 496-97).

## III. DISCUSSION

The ARB's finding of a "willful failure" was arbitrary and capricious. The weight of the evidence supported the ALJ's finding that CAMO actually did believe that documenting its efforts to post LCA notices at worksites out of its control demonstrated compliance with the LCA Notice Requirements.

20 C.F.R § 655.805 states that "willful failure" means a knowing failure or a reckless disregard with respect to whether the conduct was contrary to H1-B visa statutes or regulations. 20 C.F.R. § 655.805 cites *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988) and *Trans World Airlines v. Thurston*, 469 U.S. 111 (1985) for guidance. This

standard for "willfulness" means conduct that is "voluntary," "deliberate," or "intentional," and not "merely negligent." *McLaughlin v. Richland Shoe Co.*, 486 U.S. at 128. A violation is willful if the employer "knew . . . its conduct was prohibited by the statute." *Id.* at 133. An act is not "willful" if the employer simply knew potential violations were "in the picture." *Trans World Airlines, Inc. v. Thurston*, 469 U.S. at 127. *See also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 584 (2010) (*citing Trans World Airlines,* Inc., 469 U.S. at 125-26) (stating that the term "willful violations" is "more often understood in the civil context to excuse mistakes of law.").

The ARB's basis for finding a willful violation does not bear a rational connection with this standard of "willful failure." Knowledge of the LCA Notice Requirements themselves and knowledge that particular conduct is violative of the LCA Notice Requirements are not the same thing. The ARB correctly concluded that CAMO officials had been put on notice of the LCA Notice Requirements. However, the ARB ignored the weighty evidence that CAMO believed documenting its attempts to post at third-party worksites was an acceptable practice where the clients in control of those worksites refused to cooperate.

The ARB offered no basis for overturning the ALJ's credibility determination about Parsram, nor could it. No direct evidence contradicted Parsram's testimony. Circumstantial evidence supported her testimony. For example, both Rehl and Parsram testified to widespread belief in the community of H-1B employers that merely documenting efforts to post at third-party worksites was sufficient. CAMO did change its posting procedures after the 2005 Investigation in an apparent attempt to comply. Most critically, it is highly implausible that CAMO would have carefully documented its failures and shared those failures willingly with the DOL if it thought its conduct was impermissible. This is all the more true given that DOL had no other way of uncovering the sixty-seven individual violations.

At most, the ARB could only have rationally concluded that CAMO's violations were negligent. The 2001 and 2005 Investigations probably should have put CAMO on notice that it could not send H-1B employees to clients who refused to post notices. Nevertheless, the regulations clearly do not permit DOL to impose liability on an employer where the employer actually believed its conduct was permissible. In this case, the evidence demonstrated that CAMO believed its conduct was permissible, and the ARB did not take any steps to explain why the weighty evidence in CAMO's favor should be discounted. The DOL cannot impose liability for a negligent violation, and therefore, the ARB's Decision and Order should be set aside.

### IV.   CONCLUSION

For the reasons stated above, Defendants' motion to affirm is **DENIED**, and Plaintiff's motion to set aside the ARB's Decision and Order is **GRANTED**.

/s/ William J. Martini
_____
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: October 18, 2013**